TAYLOR v. STATE.

4750                                          261 S. W. 2d 401

Opinion delivered October 19, 1953.

*Walter L. Brown,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. From his conviction of the crime of voluntary manslaughter, appellant prosecutes this appeal.

I. *Sufficiency of the Evidence.* The appellant admitted that he stabbed the deceased, Doris Lee Broughton, with a pocket-knife, and that she died a few minutes later. On Saturday night, December 20th, the deceased had cut the appellant; and the stabbing that resulted in deceased's death occurred at a road-house, or dance-hall, the following Saturday night, December 27th. Here is appellant's own version of the fatal encounter:

"... was standing by the cigarette machine and she came over there and I said 'you bounced up against my arm,' and she said 'I am sorry,' and I said, 'get out of my face,' and she said 'you black so and so, I should have finished you up,' and I shoved her off and she came back and I shoved her back again and I went into my pocket and got my knife.

"Q. What was she doing then? A. She had run her hand in her pocket—coat pocket.

"Q. Had she already called you that language? A. Yes, sir.

"Q. And said she ought to finish you up? A. Yes, sir.

"Q. Then what did you do? A. That is when I stuck her with a knife.

"Q. What did you intend to do? A. I didn't intend to kill her and I stuck her down low.

"Q. Did you intend to kill her? A. No, sir.

"Q. Did you intend to hurt her bad? A. No, sir, I had no grudge at all, I just wanted to stop her coming on me.

"Q. Did you know her reputation down there in that community for being a dangerous character? A. She had cut two or three.

"Q. What were you trying to do when you used the knife? A. Trying to stop her off of me."

Thus appellant admitted inflicting the wound which indisputably resulted in the homicide. Appellant testified that the deceased was the aggressor; but witnesses for the State testified that the appellant said, just before he stabbed her: "You got me last Saturday night and I am going to pay you back." In view of all the testimony, we conclude that there was ample evidence to sustain the verdict.

I. *Specific Violent Acts of the Deceased.* The Court permitted witnesses to testify as to the general reputation of the deceased. This typical testimony was given by a witness called on behalf of defendant:

"Q. Do you know what her reputation was in that community for being a violent, turbulent and dangerous character for using a knife? A. Yes, sir, I know that.

"Q. Was that reputation good or bad? A. It was bad."

Without objection, the appellant was permitted to testify that he knew the deceased had "cut two or three." But appellant claims that the Trial Court should have permitted witnesses to testify as to three specific instances, in which deceased had used a knife on other men. The Trial Court was correct in refusing evidence as to specific acts of violence committed by the deceased on parties other than appellant. Our cases on this point are reviewed in *Edwards* v. *State,* 208 Ark. 231, 185 S. W. 2d 556. See also *Montague* v. *State,* 213 Ark. 575, 211 S. W. 2d 879.

III. *Instructions.* Appellant complains of the refusal of the Trial Court to give his Instructions 5, 6 and 10. It would unduly prolong this opinion to set out, *in extenso,* the refused Instructions, as well as the Instruc-

tions given, covering the points contained in the refused Instructions. It is sufficient to say: (a) that insofar as appellant's requested Instruction No. 6 contained a correct statement of the law, the same was covered by appellant's Instructions 2, 3 and 4 as given, considered with the Court's Instruction on "reasonable doubt"; and (b) that appellant's requested Instructions 5 and 10 were covered by appellant's Instructions Nos. 7 and 11, as given by the Court, when considered with the Court's Instruction on "self defense".

Finding no error, the judgment is affirmed.